IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:12cv1007-MHT |
| | ) | (WO) |
| THE CITY OF MONTGOMERY, | ) | |
| ALABAMA, a municipality, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

A police officer for defendant City of Montgomery,
Alabama stopped plaintiff Terry Hughes without cause.
Under threat of violence, the officer forced Hughes to go
to a bank and withdraw money, which the officer then took
from Hughes. Hughes claims that Montgomery is liable for
the officer's actions under both the federal and state
law. Jurisdiction is properly invoked pursuant to 28
U.S.C. § 1331 (federal question) and § 1367(a)
(supplemental jurisdiction).

1

This case is now before the court on the city's motion for summary judgment. For the reasons discussed below, the motion will be granted.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

On August 29, 2011, Montgomery Police Officer Ronald C. Daniels pulled Hughes over, allegedly for speeding. Daniels demanded that Hughes travel with him to a bank to withdraw money that Daniels believed Hughes owed to friends of Daniels. When Hughes resisted, Daniels threatened to put him in jail. Hughes finally complied, and Daniels took him to a bank, where he instructed Hughes to withdraw $ 650. Daniels confiscated the funds and gave them to friends to whom he believed Hughes owed money.

Hughes complained to the City of Montgomery. Officer Daniels was suspended and then terminated for his actions against Hughes.

Hughes then filed this lawsuit against the City of Montgomery.

## III. DISCUSSION

Hughes presents three theories by which Montgomery could be liable for Daniels's actions. First, the city could be liable based on state-law respondeat superior for

3

municipalities. 1975 Ala. Code § 11-47-190. Second, the city could be liable under state law for negligent training and supervision.[1] Finally, the city could be liable under 42 U.S.C. § 1983 for a municipal policy or practice of constitutional violations. See <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978).

## A. State Law: Respondeat Superior

Relying on respondeat superior, Hughes seeks to hold Montgomery liable based on two alleged state-law violations by Daniels: outrage; and assault and battery.

As a municipality, the city can be held liable for state-law torts only if the "injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness" of Daniels. 1975 Ala. Code § 11-47-190(a). The city cannot be held vicariously liable for its employees' intentional torts, which by definition are not

_____

1. Hughes also seems to argue a state-law negligence claim based on an affirmative duty to intervene on the city's part. The court could find no legal support that the city owed such a state-law duty to Hughes.

4

undertaken through "neglect, carelessness, or unskillfulness." Walker v. City of Huntsville, 62 So. 3d 474, 501-502 (Ala. 2010). Because outrage and assault and battery are intentional torts, Potts v. Hayes, 771 So. 2d 462, 465 (Ala. 2000) (outrage); USA Petroleum Corp. V. Hines, 770 So. 2d 589, 595 (assault and battery), the city could not be held liable under respondeat superior for Daniels's actions.

### B. State Law: Negligent Failure to Train and Supervise

Hughes next seeks to hold the city liable for Police Chief Kevin Murphy's negligent failure to train and supervise Daniels.

The city argues that, "No Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate." Br. in Supp. of Mot. for Summ. J. (Doc. No. 37) at 3 (quoting Cheatham v. City of Tallassee, 2012 WL 3890127 at *13 (M.D. Ala. 2012) (Albritton, J.); Borton v.

City of Dothan, 734 F. Supp. 2d 1237, 1258 (M.D. Ala 2010) (Watkins, J.)). Although many federal district courts have made this statement over the years, the statement may no longer be accurate. It could be argued that, in Ex parte City of Montgomery, 99 So. 3d 282, 299 (Ala. 2012), the Alabama Supreme Court recently recognized the potential for a negligent hiring, training, and supervision claim against the City of Montgomery itself.  However, while Montgomery seems to show that these claims may be viable against municipalities under Alabama law, the case also illustrates why Hughes cannot bring his claim in this circumstance.

The Montgomery court was primarily considering defenses based on Alabama's doctrine of "state-agent" immunity.  Under Alabama law,

> "Every peace officer ... whether appointed or employed as such peace officer by the state or a county or municipality thereof ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line

> and scope of his or her law enforcement
> duties."

1975 Ala. Code § 6-5-338. Section 6-5-338, therefore,

overlaps with Alabama's common-law doctrine of state-agent

immunity. In <u>Ex parte Butts</u>, 775 So. 2d 173, 177-78 (Ala.

2000), the Alabama Supreme Court adopted a restatement of

common-law state-agent immunity as follows, in part:

> "A State agent shall be immune from civil
> liability in his or her personal capacity
> when the conduct made the basis of the
> claim against the agent is based upon the
> agent's ...
>
> (2) exercising his or her judgment in the
> administration of a department or agency
> of government, including, but not limited
> to, ... (d) hiring, firing, transferring,
> assigning, or supervising personnel; ...
>
> (4) exercising judgment in the
> enforcement of the criminal laws of the
> State, including, but not limited to,
> law-enforcement officers' arresting or
> attempting to arrest persons; ...."

<u>Id</u>. at 177-78 (quoting <u>Ex parte Cranman</u>, 792 So.2d 392, 405

(Ala. 2000) (plurality opinion)). The court also

recognized certain exceptions to, or limitations on, this

immunity as follows, in part:

"[However,] a State agent shall not be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

Id. Although this common-law doctrine speaks to "State agents," it has since been modified to be coextensive with the § 6-5-338 statutory immunity offered peace officers for "a county or municipality," with the result that the immunity in ¶ (4) above is no longer limited to state employees but now extends to county and municipal police officers. Paragraph 4, along with the opening paragraph, now reads, in part, as follows:

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ...

8

> (4) exercising judgment in the
> enforcement of the criminal laws of the
> State, including, but not limited to,
> law-enforcement officers' arresting or
> attempting to arrest persons, or serving
> as peace officers under circumstances
> entitling such officers to immunity
> pursuant to § 6-5-338(a), Ala. Code
> 1975."

Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala.2006).
Thus, even the exceptions to, or limitations on, state-agent immunity apply to § 6-5-338 as well. Downing v. City of Dothan, 59 So. 3d 16, 19-20 (Ala. 2010). Finally, "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." Montgomery, 99 So.3d at 298.

A municipality is therefore entitled to two overlapping forms of immunity against state-law claims for the actions of employees in its police department. First, under § 11-47-190, in general, the city can be held liable only for the negligence of its employees. Second, state-agent immunity, as engrafted with § 6-5-338, further grants

the city immunity from suit for the negligent actions of
its peace officers in the exercise of discretionary law-
enforcement functions.  In <u>Ex parte City of Montgomery</u>, the
court appeared to suggest that hiring, training, and
supervision are discretionary functions which would be
covered by state-agent immunity. 99 So. 3d at 299. However,
the court also appeared to suggest that, while city
employees who are police officers are protected by state-
agent immunity, those who are not peace officers are not
protected by state-agent immunity (for, obviously, they are
also not state employees either) and could be sued under
a negligent hiring, training, and supervision theory. <u>Id</u>.

In this case, Hughes alleges that Montgomery Police
Chief Kevin Murphy was negligent in hiring, training, and
supervising Daniels.  Because Chief Murphy, although not
a state employee, is a peace officer, state-agent immunity
protects him and the city from suit based on negligence in

10

his discretionary acts in hiring, training, and supervising Daniels.[2]

## C. Federal Law: § 1983

Finally, relying on 42 U.S.C. § 1983, Hughes argues that, although Daniels is not a defendant, the city should be held liable for his acts because it failed to train and supervise him adequately and failed to intervene to prevent his acts.  Hughes contends that Daniels violated his right to due process (Fourteenth Amendment); right against excessive force (Fourteenth Amendment); and right against unreasonable seizure (Fourth Amendment).

A municipality may be a proper defendant under § 1983. The statute provides for "every person" who violates another's constitutional rights under color of state law

---

2. Arguably, Daniels would not necessarily be protected under state-agent immunity, since his treatment of Hughes was arguably willful, malicious, in bad faith, or beyond his authority. Butts, 775 So. 2d at 178. However, as discussed in § III.A, the city cannot be held liable for Daniels's intentional torts, regardless of state-agent immunity.

11

to be liable. Local governments are "persons" for the purposes of the statute. <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658, 690 (1978). However, "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." <u>Craig v. Floyd County, Ga.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 823–24 (1985) (plurality opinion)). There is a three-part process for determining whether a municipal defendant is liable under § 1983: "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).

Hughes does not argue that the city had a policy or custom of police officers pretextually stopping citizens and extorting cash. He does not identify another individual who experienced similar treatment at the hands of Daniels

or another Montgomery police officer. In fact, soon after the city learned of Daniels's actions, it initiated termination proceedings against him.

Hughes claims instead that the city failed to train and supervise Daniels adequately to prevent his actions. In order for a failure to train or supervise to constitute a "custom or policy" that establishes § 1983 liability, the failure must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). To show deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). "Establishing notice of a need to train or supervise is difficult. ... [I]t must have been obvious that the municipality's failure to train or supervise its employees

13

would result in a constitutional violation." <u>AFL-CIO v.</u>
<u>City of Miami</u>, 637 F.3d 1178, 1189 (11th Cir. 2011).

Hughes argues that the city did not have a training or
supervisory policy that would have prevented Daniels's
actions, but he provides no deposition or documentary
evidence which supports this proposition.  Also, in the
absence of such policy, Hughes does not identify a single
previous incident in which an officer treated a civilian
the way Daniels treated Hughes. The closest Hughes comes to
identifying notice of a need to supervise is an allegation
that Daniels used the police department computer system to
track Hughes. However, Hughes provides no evidence that
Daniels was in fact using the computer system to track
Hughes, let alone evidence that officers' computer use was
monitored or that Daniels's use would have raised a red
flag.

Instead of presenting any evidence to support his
claim, Hughes speculates: "Where is the oversight for the
search of the computer system used by the Officer that

allowed him to seek and hunt down the Plaintiff on duty? Where is the policy or supervision that detected the conduct of the Officer?" Resp. to Mot. for Summ. J. (Doc. No. 39) at 4. Hughes further insinuates that he would need additional discovery to answer these questions. Admittedly, Hughes filed his response approximately two weeks before the final deadline for discovery to be completed. However, if Hughes had outstanding discovery requests which would provide the court with evidence supporting his claims, the appropriate response would have been to request an extension from the court so the discovery could be completed. Alternatively, Hughes could have filed an affidavit or declaration setting forth the specific reasons that he is unable to provide facts which would support his Monell claims. Fed. R. Civ. P. 56(d). However, Hughes took none of these steps. In fact, Hughes seems to have little to show for the six months of discovery that had passed before he filed his summary-judgment response.

Absent any evidence of a policy, a custom, or any deliberate indifference underlying Daniels's treatment of Hughes, the court finds, as a matter of law, that Montgomery is not liable for Daniels's actions under 42 U.S.C. § 1983. <u>See</u> Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact ... as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion.")

\* \* \*

Accordingly, the City of Montgomery's motion for summary judgment will be granted. An appropriate judgment will be entered in favor of the city and against Hughes.

DONE, this the 6th day of November, 2013.


      /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE